UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JWAUN POINDEXTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00144-JMS-TAB |
| | ) | |
| D. REAGLE, | ) | |
| D. ALSIP, | ) | |
| BOLDMAN, | ) | |
| PFLIEGER, | ) | |
| D. DAVIS, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting in Part, Denying in Part
Defendants' Motion for Summary Judgment**

Plaintiff Jwaun Poindexter brought this action alleging that Pendleton Correctional Facility staff denied him religious and legal materials in violation of the First Amendment. Defendants have moved for summary judgment. Dkt. [53]. For the reasons below, summary judgment is **DENIED** as to the First Amendment claims against Defendants Boldman, Pfleeger, and Davis and **GRANTED** as to all other claims.

## I.    Preliminary Matters

### A.    Denying Request to Disregard Summary Judgment Response

Defendants argue that the Court should disregard Mr. Poindexter's summary judgment response because it does not properly cite record evidence. Dkt. 64 at 2. The Court agrees that Mr. Poindexter failed to properly support many of his statements of material fact in dispute. *See* dkt. 62 at 5−7 (repeatedly citing only "Plaintiff's Designation of Evidence" and Defendant's brief in support of their motion for summary judgment). However, because Mr. Poindexter is proceeding *pro se* in this matter, the Court will allow leeway for his failure to comply with the local rules in

this instance. *See* S.D. Ind. L.R. 56-1(l) ("The court may, in the interest of justice or for good cause, excuse failure to comply strictly with this rule.").  The Court has reviewed Mr. Poindexter's response to the motion for summary judgment and will consider his factual assertions to the extent they are supported by admissible evidence in the summary judgment record.

**B.      Striking Surreply**

Mr. Poindexter has filed a surreply in opposition to the motion for summary judgment. Dkt. 65. Under this Court's local rules, "A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response. The surreply must be filed within 7 days after the movant serves the reply and must be limited to the new evidence and objections." S.D. Ind. L.R. 56-1(d). Here, Defendants reply brief did not cite new evidence or object to the admissibility of Mr. Poindexter's evidence, but it does argue for disregarding his summary judgment response. *See* dkt. 64 at 2. If Mr. Poindexter had limited his surreply to this issue, then the Court likely would consider it. However, Mr. Poindexter instead used the surreply as an opportunity to argue the merits of the summary judgment motion and introduce new evidence for the first time. *See* generally dkt. 65. Accordingly, the surreply, dkt. [65], is **STRICKEN** because it does not comply with this Court's local rules. *See Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("[T]he district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions.").

**C.      Granting Motion for Ruling**

Mr. Poindexter's motion for ruling on the motion for summary judgment, dkt. [66], is **GRANTED** to the extent that the Court rules on the motion for summary judgment in this Order. The Court disregards any substantive arguments presented in the motion for ruling.

## II.      Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## III.      Relevant Facts

### A.      The Parties

At all relevant times,[1] Mr. Poindexter was incarcerated at Pendleton Correctional Facility. Mr. Poindexter is Muslim. Dkt. 54-1 at 8:14−17. His beliefs require daily prayer, wearing a kufi, and studying the Quran. *Id.* at 65:2−8. His beliefs also prohibit him from being in a "state of undress" in the presence of a woman who is not his wife. *Id.* at 65:20−66:1.

---

[1] The operative complaint in this action, dkt. [18], includes allegations of events dating from August 10 or 11 through September 30, 2021. Dkt. 18 at 3−5. Any events outside that time period are not at issue in this action. *See Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." (cleaned up)).

Defendant Reagle (Warden), Defendant Alsip (Deputy Warden), Defendant Boldman (Captain), Defendant Pfleeger (Lieutenant), and Defendant Davis (Property Officer) were all Indiana Department of Correction employees working at Pendleton.

### B.    Mr. Poindexter's Access to Religious Property and Clothing

On August 10, 2021, Mr. Poindexter was transferred to Pendleton from another facility and placed in a restricted housing unit as part of Covid protocols. Dkt. 54-1 at 10:5−16; dkt. 63-1 at 39. On August 20, 2021, Mr. Poindexter was reassigned to G Cell House, where he remained until September 17, 2021, when he was transferred to general population housing. Dkt. 54-1 at 10:17−12:13; dkt. 63-1 at 39. G Cell House is also restricted housing. Dkt. 54-1 at

From his arrival at Pendleton until September 30, 2021, Mr. Poindexter did not have access to his religious materials, including his Quran, prayer mat, and kufi. Dkt. 54-1 at 34:20−24; dkt. 63-1 at 27. His only items of clothing were a pair of boxer shorts, a t-shirt, and a pair of socks, all of which were exchanged for cleaning at shower time. Dkt. 54-1 at 27:21−28:4.

Mr. Poindexter complained to Lieutenant Pfleeger and Officer Davis in person between August 20 and September 17, 2021, that he did not have access to his religious property. Dkt. 62 at 6.[2] Neither took any action to resolve the issue. *Id.*

Mr. Poindexter filed a grievance on September 6, 2021, complaining that he was being denied his religious property, as well as drinking and eating utensils. Dkt. 63-1 at 4. Officer Davis responded on September 15, "This is the first I have been made aware of this, I will make sure he has his drinking and eating utensils today." *Id.* at 6. Officer Davis did not mention the religious property, and Mr. Poindexter did not receive his religious property back for another two weeks. *Id.* at 6, 27. Mr. Poindexter appealed the grievance denial, and Warden Reagle received the grievance

---

[2] Mr. Poindexter's summary judgment response is signed under penalty of perjury. Dkt. 62 at 10.

appeal from Mr. Poindexter on or about October 6, 2021. Dkt. 63-1 at 5. Warden Reagle asserts that this is the first he had learned about Mr. Poindexter's difficulty obtaining personal property.

Mr. Poindexter filed another grievance on September 6, 2021, stating that being forced to remain in boxer shorts in the presence of female officers violated his religious beliefs. Dkt. 63-1 at 11. He did not receive any response to this grievance. Dkt. 62 at 5, ¶ 27.

### C.   Policies for Clothes and Property in G Cell House

At all relevant times, Pendleton policy allowed individuals in G Cell House to possess one of each of the following clothing items: t-shirt, boxer shorts, socks, jumpsuit, shower shoes, and tennis shoes or slip-on shoes. Dkt. 54-2, ¶ 4 (Reagle affidavit). Individuals were also allowed one pair of sweatpants, but only if they had been previously purchased through the prison commissary. *Id.* Individuals were permitted to wear their clothing "at all times, except when actively showering, when placed on strip cell status, when undergoing a strip search, or when their clothing was confiscated from them or ordered to be removed for safety and security reasons." *Id.*, ¶ 5.

When individuals were transferred to Pendleton, their personal property items were seized, inventoried, and inspected before being returned. Dkt. 54-3, ¶ 4 (Davis affidavit). The same process occurred when individuals were sent to restricted housing, including G Cell House. *Id.*, ¶ 5. Officer Davis was responsible for all property screening at Pendleton, and he processed items in the order they were received. *Id.*, ¶ 7. Incarcerated individuals could fast-track the screening of certain religious property, including prayer mats and Qurans, by requesting these items from the assigned counselor. *Id.*, ¶ 13. Incarcerated individuals were "encouraged to ask their Counselor for assistance in obtaining their religious materials." *Id.* Individuals could also buy religious items through the prison commissary or outside vendors. *Id.*, ¶ 14. Mr. Poindexter testifies that he had no access to commissary while in G Cell House. Dkt. 54-1 at 36:18−20.

## IV.     Discussion

Mr. Poindexter contends that Defendants deprived him of the right to free exercise of religion and violated the Religious Land Use and Institutionalized Persons Act (RLUIPA) based on (1) the denial of religious property, including his prayer mat, kufi, and Quran, and (2) the denial of adequate clothing, which forced him to be in a "state of undress" in the presence of female correctional officers. Defendants seek summary judgment based on four arguments: (1) they were not personally involved in the alleged deprivations; (2) any RLUIPA claim for damages is barred by the Eleventh Amendment; (3) Mr. Poindexter's First Amendment rights were not violated; and (4) they are entitled to qualified immunity.

### A.     RLUIPA Claims

Individual officials are not subject to suit under RLUIPA, no matter the relief sought. *Nelson v. Miller*, 570 F.3d 868 (7th Cir. 2009). Mr. Poindexter does not purport to seek injunctive relief, and any such relief would be moot, as Mr. Poindexter is no longer in restricted housing at Pendleton Correctional Facility. Dkt. 58. Accordingly, Defendants are entitled to summary judgment on any RLUIPA claims.

### B.     First Amendment Claims

To succeed on his First Amendment free-exercise claim, Mr. Poindexter must convince the factfinder that the defendants "personally and unjustifiably placed a substantial burden on his religious practices." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (cleaned up). Even a substantial burden is permitted if the burden is "reasonably related to legitimate penological objectives." *Vinning-El v. Evans*, 657 F.3d 591, 592−93 (7th Cir. 2011) (citing *Turner v. Safley*, 482 U.S. 78, 89−91 (1987)). Courts rely on four factors in determining

6

whether a substantial burden is constitutionally permissible: (1) whether the policy rationally relates to a legitimate governmental objective; (2) whether the inmate has an alternative means of exercising the right; (3) the impact that accommodating the right will have on security; and (4) whether ready alternatives exist to the prison's policy. *Turner*, 482 U.S. at 89−91. "The four factors are all important, but the first one can act as a threshold factor regardless which way it cuts." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010).

### 1.      Deputy Warden Alsip

Deputy Warden Alsip is entitled to summary judgment because he was not personally involved in any First Amendment deprivation.

Individuals may be held liable under § 1983 only where the plaintiff establishes that they were personally involved in the alleged constitutional deprivation. *Johnson v. Rimmer*, 936 F.3d 695, 710 (7th Cir. 2019) ("In an action under § 1983, the plaintiff must establish individual liability . . . Thus, [the plaintiff] must be able to establish [the defendant's] personal involvement in the alleged constitutional deprivation.") (cleaned up); *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (individual defendants cannot be held liable under § 1983 unless they had some personal involvement in the alleged deprivation).

Mr. Poindexter has not identified evidence from which a jury could find that Deputy Warden Alsip was involved in the events at issue in this case. In his summary judgment briefing and other filings, Mr. Poindexter makes several conclusory assertions about Deputy Warden Alsip's personal knowledge of events. *See*, *e.g.*, dkt. 19 at 3, ¶ 9 ("I ended-up writing, and-or-speaking to all defendants, stated herein since I was sent to G-Housing unit. About getting my Religious Materials and clothing."); dkt. 62 at 7, ¶ 35 ("The Plaintiff Poindexter would like to assert for the court(s), record, and-or-herein. At all relevant time(s) to the Plaintiff complaint,

Defendant(s) Reagle, Alsip, Boldman, Pfleeger, Davis, all had personal knowledge, awareness, involvement, of the specific claim(s), raised in the body of the Plaintiff complaint."). But Mr. Poindexter does not provide any evidence of an instance where he notified Deputy Warden Alsip of any specific deprivation. Indeed, Mr. Poindexter acknowledges that he sued Deputy Warden Alsip based on his assumptions about how the prison grievance process worked. *See* dkt. 54-1 at 53:19−54:7 ("[H]e should have had knowledge of the incident due to the grievance policy because that's what the grievance policy says."). But there is no evidence that Deputy Warden Alsip received a grievance about the alleged deprivations. *See id.* at 54:8−13 (Mr. Poindexter acknowledging that Deputy Warden Alsip never responded or spoke to him about his grievances).

Because the designated evidence would not allow reasonable jury to find that Deputy Warden Alsip was personally involved in any First Amendment deprivation, he is entitled to summary judgment on all claims against him.

### 2.    Warden Reagle

Warden Reagle is also entitled to summary judgment because he was not personally involved in any First Amendment deprivation.

For summary judgment purposes, the Court assumes that Warden Reagle had authority to adopt and change prison policies regarding personal property in G Cell House, including both clothing and religious items. But no reasonable jury could find based on the summary judgment record that these policies caused a First Amendment deprivation.

Mr. Poindexter has not rebutted Warden Reagle's assertion that prison policy permitted individuals housed in G Cell House to request religious property from their counselor and that those requests were generally approved absent some specific safety concern. *See* dkt. 54-2 at 3−4,

¶ 10 ("Commonly approved religious property typically included items such as prayer rugs, religious books, and some form of religious headwear."). Nor has Mr. Poindexter rebutted Warden Reagle's assertion that he did not learn of Mr. Poindexter's inability to obtain his religious property until he received Mr. Poindexter's grievance appeal on or about October 6, 2021. *Id.* at 5, ¶ 13; dkt. 63-1 at 5. Thus, no reasonable jury could find based on the summary judgment record that Warden Reagle was personally responsible for the alleged deprivation of Mr. Poindexter's religious property.

Similarly, Mr. Poindexter has not rebutted Warden Reagle's assertion that Mr. Poindexter was entitled to a jumpsuit under prison policy. *See* dkt. 54-2 at 1−2, ¶ 4. Nor has he rebutted Warden Reagle's assertion that prison policy did not prevent individuals housed in G Cell House from wearing their prison-issued clothing of their choice during transport, including shower transport. *Id.* at 2, ¶ 5−6. And even if Mr. Poindexter could show that Warden Reagle knew he did not have access to adequate clothing, he has not presented evidence that Warden Reagle knew of any religious implications of Mr. Poindexter's lack of clothing. *See id.* at 3, ¶ 9.

Because the designated evidence would not allow reasonable jury to find that Warden Reagle was personally involved in any First Amendment deprivation, he is entitled to summary judgment on all claims against him.

### 3.     Captain Boldman, Lieutenant Pfleeger, and Officer Davis

Captain Boldman, Lieutenant Pfleeger, and Officer Davis are not entitled to summary judgment on the First Amendment claims against them. These defendants each argue that (1) they are not personally responsible for any First Amendment deprivation; (2) Mr. Poindexter did not suffer a First Amendment deprivation; and (3) they are entitled to qualified immunity. The Court agrees that these Defendants are entitled to summary judgment as to the deprivation of adequate

clothing based on lack of personally responsibility. However, disputed issues of material fact preclude summary judgment on the First Amendment claims based on denial of religious property.

### a.      Personal involvement

Captain Boldman, Lieutenant Pfleeger, and Officer Davis contend that they were not on notice that the alleged denial of pants burdened Mr. Poindexter's religious practice. Dkt. 55 at 11−13. Indeed, Mr. Poindexter has not identified any contrary evidence. Mr. Poindexter filed a grievance about this issue, but he received no response. Dkt. 62 at 5, ¶ 27; dkt. 63-1 at 11. And he has not properly cited any other evidence that he discussed his religious concerns regarding clothing with Captain Boldman, Lieutenant Pfleeger, or Officer Davis. The Court will not search the record for such evidence. *See Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th Cir. 2017) (district court need not scour the record for evidence potentially relevant to summary judgment motion). Accordingly, Captain Boldman, Lieutenant Pfleeger, and Officer Davis are entitled to summary judgment as to any First Amendment claim based on the denial of adequate clothing to maintain modesty.

Captain Boldman, Lieutenant Pfleeger, and Officer Davis also contend that they were not on notice that Mr. Poindexter was missing items that were necessary for his religious practice. Dkt. 55 at 13. Mr. Poindexter testified that he spoke with Captain Boldman and Lieutenant Pfleeger directly about not having access to his religious property. Dkt. 54-1 at 50:22−2, 52:17−53:11. And Officer Davis acknowledged Mr. Poindexter's grievance about religious property on September 15, 2021—though Officer Davis did not actually respond to the complaint about denial of religious property. Dkt. 63-1 at 6. The religious items were not returned until September 30, 2021. From this, a reasonable jury could find that Captain Boldman, Lieutenant

Pfleeger, and Officer Davis were on notice that Mr. Poindexter was being deprived of items that were required for his religious practice.

Finally, Captain Boldman and Lieutenant Pfleeger contend that they did not have authority to retrieve Mr. Poindexter's religious items. Taking this as true, a reasonable jury still could conclude that Captain Boldman and Lieutenant Pfleeger were in a position to remedy the First Amendment deprivation by notifying Mr. Poindexter's counselor about the situation, or even directing Mr. Poindexter to do so.[3]

Accordingly, Captain Boldman, Lieutenant Pfleeger, and Officer Davis are not entitled to summary judgment based on lack of personal responsibility for the alleged deprivation of religious property.

### b.    First Amendment violation and qualified immunity

Captain Boldman, Lieutenant Pfleeger, and Officer Davis argue that Mr. Poindexter did not suffer a First Amendment violation and that, even if he did, they are entitled to qualified immunity.

To succeed on his First Amendment free-exercise claim, Mr. Poindexter must convince the factfinder that the defendants "personally and unjustifiably placed a substantial burden on his religious practices." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (cleaned up). Even a substantial burden is permitted if the burden is "reasonably related to legitimate penological objectives." *Vinning-El v. Evans*, 657 F.3d 591, 592−93 (7th Cir. 2011) (citing *Turner v. Safley*, 482 U.S. 78, 89−91 (1987)). Courts rely on four factors in determining

---

[3] While Warden Reagle and Officer Davis both assert that Mr. Poindexter's counselor likely would have been able to retrieve his religious property, no Defendant asserts that they informed Mr. Poindexter of this fact.

whether a substantial burden is constitutionally permissible: (1) whether the policy rationally relates to a legitimate governmental objective; (2) whether the inmate has an alternative means of exercising the right; (3) the impact that accommodating the right will have on security; and (4) whether ready alternatives exist to the prison's policy. *Turner*, 482 U.S. at 89−91. "The four factors are all important, but the first one can act as a threshold factor regardless which way it cuts." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010).

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To overcome the defendant's invocation of qualified immunity, [a plaintiff] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 646 (1987)). To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson*, 483 U.S. at 641). Although "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up).

Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015).

By August 2021, it was clearly established that prison officials may not intentionally deprive incarcerated individuals of central religious texts and worship items without any stated penological basis. *See Garner v. Muenchow*, 715 F. App'x 533, 536 (7th Cir. 2017).

Here, a reasonable jury could conclude that Mr. Poindexter's Quran, prayer mat, and kufi were central to his religious practice. A reasonable jury could also conclude that providing these items would have been consistent with prison policy. Dkt. 54-2, ¶ 10 ("Commonly approved religious property typically included items such as prayer rugs, religious books, and some forms of religious headware."); dkt. 54-3, ¶ 13.

Defendants defend the prison's property screening policy on First Amendment grounds. Dkt. 55 at 15−17. But this defense hinges on an incarcerated individual's opportunity to request access religious items earlier than the ordinary timeframe for screening. Here, a reasonable jury could find that Captain Boldman, Lieutenant Pfleeger, and Officer Davis deprived Mr. Poindexter of that opportunity. *See Garner*, 715 F. App'x at 536−37 (reasonable jury could find intentional deprivation of religious texts because prison officials "intentionally and substantially prevented his religious practice by refusing to tell him how he, on his own, may permissibly obtain the items that he needed for practice").

Accordingly, Captain Boldman, Lieutenant Pfleeger, and Officer Davis are not entitled to summary judgment on Mr. Poindexter's First Amendment claims against them, including on qualified immunity grounds.

13

### V.      Conclusion and Further Proceedings

Mr. Poindexter's motion for ruling, dkt. [66], is **GRANTED to the extent set forth below**.

Defendants' motion for summary judgment, dkt. [53], is **DENIED** as to Mr. Poindexter's First Amendment claims regarding the deprivation of religious property against Captain Boldman, Lieutenant Pfleeger, and Officer Davis. As to all other claims, the motion for summary judgment is **GRANTED**.

The **clerk is directed** to include a blank motion for assistance with recruiting counsel with Mr. Poindexter's copy of this Order. Mr. Poindexter shall have **21 days** following the issuance of this Order to file a motion for assistance with recruiting counsel or notify the Court that he intends to proceed *pro se* for the remainder of this action.

The **Magistrate Judge is requested** to schedule a telephonic status conference with the parties to discuss trial readiness and the possibility of settlement.

**IT IS SO ORDERED.**

Date: 6/24/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

JWAUN POINDEXTER
149218
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Magistrate Judge Tim A. Baker

14